United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jorge Medina Ferrer, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-20127-Civ-Scola |
| | ) |
| Erin K. Fatica and Chad F. Wolf, Defendants. | ) |

**Order on Motions for Summary Judgment**

This matter is before the Court upon Plaintiff Jorge Medina Ferrer's and the Defendants' motions for summary judgment. (ECF Nos. 18, 20.) Medina argues that the Defendants improperly exercised their discretion when they determined Medina to be ineligible for adjustment of status under the Cuban Adjustment Act. The Defendants argue that the evidence permitted their findings and that they did not otherwise abuse their discretion. Both parties filed response briefs (ECF Nos. 22–23), and while both parties had an opportunity to file a reply brief, neither party did. The Court **grants** the Defendants' motion for summary judgment (**ECF No. 20**) and **denies** the Plaintiff's motion for summary judgment (**ECF No. 18**).

1. **Facts**

From Cuba to Texas, Jorge Medina Ferrer travelled to the United States to reunite with his family in Florida and to leave Cuba. (GOV0104.) Like most who reach the border, it is impossible to know how far Medina had to come to arrive here. But once here, Medina made a series of inconsistent statements to United States officials—these statements served as the basis for the later denial of Medina's application for adjustment of status. The Court will detail the circumstances and nature of these alleged inconsistencies.

On August 19, 2017 in Laredo, Texas, Jorge Medina Ferrer, a native and citizen of Cuba, applied for admission to the United States. (ECF No. 21 at ¶ 1; ECF No. 22 at ¶ 1.) The next day, a Custom and Border Protection officer interviewed Medina in Spanish, Medina's native language. (ECF No. 19 at ¶ 4, ECF No. 24 at ¶¶ 4, 43.) In this interview, Medina relayed that he had never been arrested "anywhere in the world." (ECF No. 19 at ¶ 5; ECF No. 24 at ¶ 5); *see* GOV0103 (responding "no" to the question "[h]ave you ever been arrested anywhere in the world").

Almost one month later, an asylum officer interviewed Medina to evaluate whether Medina had a credible fear of returning to Cuba. (ECF No. 21

at ¶ 3; ECF No. 22 at ¶ 3.) In this interview, Medina stated that he had been arrested twice in Cuba. (*Id.*); (*see* GOV0095 (responding "2 times" when asked "[w]ere you arrested more than once").) Medina explained that he had been arrested at some time around September 2016 for about three weeks and again around March 2017 for about two weeks. (ECF No. 21 at ¶ 3 & n.2; ECF No. 22 at ¶ 3.) Medina told the asylum officer that he had been physically hurt while detained in Cuba on both occasions. (GOV0095–96.) Medina was found to be credible during the interview. (ECF No. 19 at ¶ 7; ECF No. 24 at ¶ 7.)

Over one year later, in December 2018, Medina filed form I-485 to adjust his status under the Cuban Adjustment Act. (ECF No. 21 at ¶ 5; ECF No. 22 at ¶ 5.) On this form, Medina responded affirmatively to question 25, indicating that he had been previously arrested, cited, charged, or detained. (*Id.*)

In June 2019, an immigration officer interviewed Medina in connection with his application for adjustment of status. (ECF No. 21 at ¶ 6; ECF No. 22 at ¶ 6.) When asked about question 25, Medina responded orally that he had never been arrested. (*Id.*) Medina then gave a sworn statement at this interview, stating that he had been arrested or detained "only for immigration." (ECF No. 21 at ¶ 7; ECF No. 22 at ¶ 7); (*see* GOV0056 (responding "[y]es, only for immigration" when asked "[h]ave you ever been arrested, cit[ed], charged, or detained for any reason, anywhere in the world").) When asked specifically about any arrests, citations, charges, or detentions in Cuba, Medina responded that he had been arrested "only once" in Cuba, in 2016. (*Id.*)

In April 2020, Medina's I-485 was denied because of the inconsistencies in Medina's retelling of his arrests in Cuba. (ECF No. 21 at ¶ 9; ECF No. 22 at ¶ 9.) The immigration officer determined that Medina had misrepresented facts to gain a benefit under immigration law. (*Id.*) Medina later filed with the United States Citizenship and Immigration Services ("USCIS") a motion to reopen or reconsider his application, arguing that he misunderstood the immigration officials' various terminologies and that Medina's misrepresentations were not willful. (ECF No. 21 at ¶ 10; ECF No. 22 at ¶ 10.) The USCIS summarily dismissed the motion on June 25, 2020. (ECF No. 21 at ¶ 11; ECF No. 22 at ¶ 11.)

## 2. Legal Standard

"[S]ummary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). However, when reviewing an administrative agency action, a court may set aside the action only if it is illegal, unconstitutional, unsupported by substantial evidence, or "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. In particular, when reviewing the denial of a motion to reopen an immigration proceeding, courts review for abuse of discretion and determine whether the agency exercised its discretion arbitrarily or capriciously. *See Peraza-Paz v. U.S. Att'y Gen.*, No. 20-13941, 2021 WL 4099235, at *1 n.2 (11th Cir. Sept. 9, 2021). Given the limitations on court review of agency action, "even in the context of summary judgment, an agency action is entitled to great deference." *Sunshine Co. Food Distrib., Inc. v. USCIS*, 362 F. App'x 1, 2–3 (11th Cir. 2010) (quoting *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996)).

Therefore, courts do not conduct an independent investigation or substitute their judgment for that of the agency. *See Sunshine Co.*, 362 F. App'x at 3. Rather, courts must only decide, "on the basis of the record the agency provides, whether the action passes muster under the appropriate APA standard of review." *Id.* (quoting *Preserve*, 87 F.3d at 1246).

### 3. Analysis

Medina sought to adjust his status pursuant to the Cuban Adjustment Act ("CAA"). *See* Pub. L. 89-732, 80 Stat. 1161 (1966). Individuals qualify for an adjustment of status under the CAA where they (1) are a native or citizen of Cuba, (2) were admitted or paroled into the United States after January 1, 1959, (3) are physically present in the United States for at least one year, (4) applied for and are eligible to receive an immigrant visa, and (5) are admissible to the United States for permanent residence. *See Toro v. Sec'y, U.S. Dep't of Homeland Sec.*, 707 F.3d 1224, 1228 (11th Cir. 2013). However, "the decision to grant an adjustment of status is purely discretionary," and therefore an applicant bears the burden of proof to persuade USCIS to exercise that discretion favorably. *See Ibara v. Swacina*, No. 09-22354-CIV, 2009 WL 4506544, at *2 (S.D. Fla. Dec. 3, 2009) (Huck, J.) (quoting *Eide-Kahayon v. INS*, 86 F.3d 147, 150 (9th Cir. 1996)).

Here, USCIS found that Medina was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i), which provides that an individual who, "by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." *See* 8 U.S.C. § 1182(a)(6)(C)(i); (*see* GOV0001.) A fact is "material" for purposes of Section 1182(a)(6)(C)(i) if the misrepresentation of that fact "tends to shut off a line of inquiry which is relevant" to an applicant's eligibility or otherwise "had a natural tendency to influence the decisions of" an immigration official. *Azim v. U.S. Att'y Gen.*, 314 F. App'x 193, 196 (11th Cir. 2008); *Matter of D.R.*, 27 I&N

Dec. 105, 108–13 (BIA 2017). A willful misrepresentation is one where the statement was deliberate and the applicant had knowledge of the statement's falsity. *See Azim*, 314 F. App'x at 195. An intent to deceive is not required. *See Alfaro v. U.S. Att'y Gen.*, 862 F.3d 1261, 1264 (11th Cir. 2017) (noting that "a willful misrepresentation does not require intent to deceive").

Considering all of the above, the question for the Court is whether USCIS's denial of Medina's motion to reopen or reconsider and its finding that Medina willfully misrepresented a material fact to immigration officials were arbitrary, capricious, or an abuse of discretion. The Court holds that such denial and finding were not arbitrary, capricious, or an abuse of discretion.

### A. Material and Willful Misrepresentations

Over the course of five distinct interactions with immigration officials, Medina gave inconsistent responses to questions concerning whether he had been arrested before. Of particular importance, in August 2017 Medina first told a Customs and Border Protection agent that he had never been arrested. (ECF No. 21 at ¶ 2; ECF No. 22 at ¶ 2.) Then Medina stated at his credible fear interview one month later that he had been arrested twice in Cuba. (ECF No. 21 at ¶ 3; ECF No. 22 at ¶ 3.) This was the only occasion where Medina reported that he had been arrested twice. Later, in June 2019, Medina initially stated that he had only been arrested in connection with his crossing into the United States, then he vacillated to testimony that he had been arrested once in Cuba, and then when confronted with his inconsistencies, testified that he forgot about his second arrest in Cuba. (ECF No. 21 at ¶¶ 6–7; ECF No. 22 at ¶¶ 6–7.) The USCIS did not abuse its discretion when it considered these misrepresentations both material and willful.

*First*, these misrepresentations likely influenced the immigration officers' determinations of whether Medina was eligible for certain benefits. *See Azim*, 314 F. App'x at 196 (holding that a material misrepresentation is one with a "natural tendency to influence the decisions of an immigration official") (cleaned up). As the USCIS determined, Medina's initial misrepresentation to the Customs and Border Protection agent (that he had never been arrested) suggests that Medina sought to enter the United States without issue. (GOV0005.) One month later, Medina's misrepresentation to an asylum officer (that he had been arrested and beat twice in Cuba) suggests that Medina wanted to influence the officer and to corroborate his stated fear of returning to Cuba in order to obtain asylum. (*Id.*) Last, Medina's misrepresentation during his adjustment of status interview (that he had only been arrested once) suggests that he sought to obtain permanent resident status. (*Id.*) The Court does not hold that those are the only inferences that one could draw from

Medina's misrepresentations. However, it was not an abuse of discretion for the USCIS to draw those inferences and to conclude that these misrepresentations, each made at a unique point in Medina's journey to the United States, were calculated to influence immigration officials and to confer a potential immigration-related benefit.

*Second*, the USCIS did not err when it concluded that Medina's misrepresentations were willful, meaning that the misrepresentations were deliberate and were made with knowledge of their falsity. *See Azim*, 314 F. App'x at 195. Medina made the September 2017 and June 2019 representations at issue under oath, and the USCIS did not err by concluding that these were made with knowledge of their falsity, as Medina knows the number of times he was arrested and tortured in Cuba. *See id.* at 196 (holding that the plaintiff "was aware that he had been arrested, convicted, and imprisoned," therefore satisfying the knowledge prong). Moreover, it was not an abuse of discretion for the USCIS to conclude that the misrepresentations were made deliberately. As the USCIS held, the misrepresentations, given in response to unambiguous questions, suggested a deliberate scheme to obtain favorable immigration benefits. (*See* GOV0005); *see also Parlak v. Holder*, 578 F.3d 457, 465 (6th Cir. 2009) (holding that inconsistent statements regarding prior arrests were deliberately made where the questions were unambiguous).

Medina argues that there was no willful misrepresentation, as the immigration officials used inconsistent and confusing terminologies when questioning Medina about his experiences in Cuba. In essence, Medina argues that immigration officials at times referred to "detentions" and at time referred to "arrests," thereby confusing Medina, who may ascribe different meanings to those terms. (ECF No. 18 at 8–9; ECF No. 22 at 3–4.) However, at the September 2017 interview, in response to the question "were you arrested more than once," Medina responded, "2 times." (GOV0095.) This suggests that in September 2017 Medina understood that he had been arrested twice. In the June 2019 interview, Medina was asked whether he had "ever been arrested, cited, charged, or detained for any reasons, anywhere in the world," after which Medina responded "yes, only for immigration." (GOV0056.) In that same interview, when asked "how many times were you arrested" in Cuba, Medina then responded, "only once." (GOV0057.) Therefore, these interviews all consistently used the term "arrest," and it was not an abuse of discretion for the USCIS to determine that Medina understood the word "arrest." But to the extent that Medina gave different meanings to the words "arrest" and "detention," immigration officers used the verbiage "arrested, cited, charged, or detained" when discussing Medina's arrests in Cuba, thereby reducing any ambiguity. (GOV0056); *see also Parlak*, 578 F.3d at 465.

For these reasons, the Court holds that the USCIS's denial of Medina's adjustment of status application was not arbitrary, capricious, or an abuse of discretion.[1]

### B. Voluntary and Timely Retraction

Medina argues that he voluntarily and timely offered a retraction of his inconsistent statements. In particular, Medina argues that while he initially incorrectly stated that he had only been arrested once in his June 2019 interview, he later corrected himself, explaining that he forgot about his second arrest. (ECF No. 18 at 7.) According to Medina, this retraction cures any misrepresentations that he made and renders the finding of inadmissibility under Section 1182(a)(6)(C)(i) arbitrary, capricious, and an abuse of discretion. *See Matter of R.R*, 3 I&N Dec. 823, 823 (BIA 1949) (holding that an individual who "testifies falsely under oath as to a material fact, but who voluntarily and without prior exposure of his false testimony, comes forward and corrects his testimony, has not committed the offense of perjury"). However, Medina did not correct his testimony "without prior exposure." *See id.* Rather, Medina only corrected his testimony once the immigration official questioned him about the inconsistency. *See Llanos-Senarillos v. United States*, 177 F.2d 164, 165–66 (9th Cir. 1949) (holding that there is no recantation if the individual recanted "only after he knew his false testimony would not deceive"). Therefore, it was not arbitrary, capricious, or an abuse of discretion for the USCIS to conclude that Medina failed to voluntarily and timely retract his misrepresentations.[2]

---

[1] The USCIS also denied Medina's motion to reopen or reconsider because of alleged inconsistent statements that Medina made concerning his involvement with a political organization in Cuba. (GOV0005.) The parties did not brief this basis for the denial of Medina's motion. Therefore, the Court will not consider whether the USCIS's denial of the motion on the basis of alleged inconsistencies regarding Medina's involvement in political organizations was arbitrary, capricious, or an abuse of discretion. In any event, the Court holds that the USCIS's denial of the motion was justified and not arbitrary, capricious, or an abuse of discretion because of Medina's inconsistent statements regarding his prior arrests in Cuba.

[2] Furthermore, Medina appears to potentially argue that the Defendants violated 8 C.F.R. § 103.2(b)(16)(i), which requires the USCIS to inform an applicant of any derogatory information of which the applicant is unaware and provide the applicant an opportunity to rebut the information before an adverse decision is issued. (ECF No. 18 at 9.) However, Medina does not point to any derogatory information that he believes was withheld. *See Francois v. Johnson*, No. 13-cv-01964, 2014 WL 1613932, at *6 (D. Ariz. Apr. 22, 2014) (holding that there was no violation of 8 C.F.R. § 103.2(b)(16)(i) where the plaintiff did "not point to any derogatory information considered by USCIS of which she was unaware"). In any event, Medina was made aware of the derogatory information that the USCIS relied on, as the immigration officer asked Medina about his inconsistent responses in the June 2019 I-485 interview.

### 4. Conclusion

For the reasons stated above, the Court **grants** the Defendants' motion for summary judgment (**ECF No. 20**) and enters judgment in the Defendants' favor. The Court **denies** the Plaintiff's motion for summary judgment (**ECF No. 18**.) The Court directs the Clerk to **close** this case. All pending motions, if any, are **denied as moot**.

**Done and ordered** in Miami, Florida, on October 22, 2021.

_____
Robert N. Scola, Jr.
United States District Judge